UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 23-cr-00264 (JDB) |
| v. | : | |
| | : | |
| YESENIA JAURE and | : | |
| JACOB HAWKINS, | : | |
| | : | |
| **Defendants** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendants Yesenia Jaure and Jacob Hawkins each to 14 days intermittent confinement as a condition of three years' probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution as to each defendant.

**I.   Introduction**

Defendants Yesenia Jaure, 36, and Jacob Hawkins, 39, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress' certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than $2.9 million in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

Jaure and Hawkins each pled guilty to violating 18 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by the defendants being among the first rioters to enter the U.S. Capitol Building through a violent altercation at the Rotunda Door, their decision to walk into the House Speaker's Staff Office minutes after the police had escorted them out of the hallway, and the lengthy period of time that they chose to remain in the Building.

The Court must also consider that Jaure's and Hawkins' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Jaure's and Hawkins' crime support a sentence for each defendant of 14 days intermittent confinement as a condition of three years' probation.

II.     **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 17 (Jaure PSR) and ECF 18 (Hawkins PSR) at ¶¶ 7-13.

*Breach of the Capitol Building Through the Rotunda Door*

One of the main points of entry for rioters on January 6, 2021 was through a set of ornate double doors at the top of the Central East Steps. These doors have been referred to as the Columbus Door or the Rotunda Door. The Rotunda Door is often regarded as the main door into the Capitol Building. In Images 1 and 2 below, the Rotunda Door is circled in red.

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.



*Image 1 – Screenshot from https://youtu.be/CqBB3Mt06XA*

On January 6, 2021, the outer perimeter of the Capitol Grounds, made up of bicycle-rack style fencing, bore numerous signs stating, "AREA CLOSED – By order of the United States Capitol Police Board[.]" These fences were not actively manned, but members of the U.S. Capitol Police ("USCP") were stationed nearby, as well as patrolling through the grounds. In Image 2, the fencing on the East Front is indicated with dotted lines, and the Rotunda Door is marked with a red circle.



*Image 2: Open-Source Rendering of Capitol Building and Grounds as they appeared on January 6, 2021, credited to Twitter users @ne0ndistraction & @sansastark525.*

The rioters first overran the USCP at the fencing on the East Front at a little before 2 p.m. The USCP then established a temporary police line at the base of the East Central steps but were again overrun. At about 2:06 p.m., rioters flooded up the steps, between the columns, and on to the surrounding balconies.



*Image 3: Screenshot from Capitol Security Video*

4

USCP officers retreated to the Rotunda Door and were soon surrounded. Rioters attacked them with sticks, fists, flag poles, and tear gas.



*Images 4 and 5: Screenshots from https://youtu.be/MVullQb-Lec*

Rioters outside the Rotunda Door attacked the police and tried to break in, smashing the Rotunda Door windows in the process. At about 2:25 p.m., a rioter already inside the Capitol opened the door from the inside. At that point, rioters, including Jaure and Hawkins, rushed through the Rotunda Door, despite the presence of police officers trying to close the door.

*Defendants' Roles in the January 6, 2021 Attack on the Capitol*

Jaure and Hawkins traveled on a charter bus that departed from Hillsdale, Michigan on the night of January 5, 2021, and arrived at the Martin Luther King Memorial in Washington, D.C. the morning of January 6, 2021. They walked from the Memorial to the Washington Monument to attend the Trump rally. Thereafter, they walked to the U.S. Capitol.

By approximately 2:25 p.m., Jaure and Hawkins were at the front of the rioters attempting to gain access into the US Capitol building through the Rotunda Door. *See* Image 6.



*Image 6 – Hawkins and Jaure (circled in yellow) at the front of the rioters (screenshot at 00:49 from video submitted to the Court as Exhibit 1)*

Hawkins and Jaure are clearly visible in Exhibit 1 from 00:35 to 1:23 moving towards the Rotunda Door, and then Hawkins holds the door open for Jaure and others. *See* Image 7.



*Image 7 – Hawkins (circled in red) holding the Rotunda door open as Jaure (circled in green) enters (screenshot at 01:08 from video submitted to the Court as Exhibit 1)*

At 2:26 p.m., Jaure, followed by Hawkins, are amongst the first to enter the U.S. Capitol building through the Rotunda Door on the east side of the building. *See* Image 8.



*Image 8 – Jaure, followed by Hawkins, (circled in red) enters the Capitol building at 2:26 p.m.*

Jaure and Hawkins walked around the Rotunda for several minutes. Jaure took pictures and videos. *See* Image 9.[2]

---

[2]  Hawkins told the FBI that he took two pictures, but then his phone ran out of battery.



*Image 9 – Jaure and Hawkins (both circled in red), among the first rioters in the Rotunda*

After the Rotunda, the couple walked through Statuary Hall. *See* Image 10.



*Image 10- Jaure and Hawkins in Statuary Hall.*

By 2:42 p.m., Jaure and Hawkins had doubled back through the Rotunda and then headed to the House Speaker's Hallway. Once arrived, they were promptly escorted out of that Hallway by officers at 2:43 p.m. *See* Image 11.



*Image 11 – Jaure and Hawkins being escorted out by police*

Undeterred, the two returned seven minutes later and walked into House Speaker Nancy Pelosi's Staff Office. *See* Images 12-14.



*Image 12 – Jaure and Hawkins walking down the same hallway pictured in Image 11.*



*Image 13 – Jaure enters Speaker Pelosi's Staff Office*



*Image 14 – Hawkins follows*

Jaure and Hawkins spent two minutes in Speaker Pelosi's Staff Office, and then walked back to the Rotunda, where Jaure took more pictures and video with her phone. *See* Image 15.



*Image 15 – Jaure seated on the ground in an apparent attempt to get a picture or video of Hawkins with the Dome overhead*

Jaure and Hawkins then walked up and down a Senate hallway and eventually left the Capitol building through the same Rotunda Door through which they entered. They exited at approximately 3:07 pm, after being inside the U.S. Capitol Building for approximately 40 minutes.

After they left the Capitol Building, Jaure and Hawkins walked around Washington, D.C. and then returned to the charter bus, which drove them back to Hillsdale, Michigan.

*Jaure's Interview with the FBI*

Before she was charged, Jaure and her attorney voluntarily met with the FBI on April 7, 2022. At that time, Jaure admitted to the FBI that she had attended the Trump rally, walked onto Capitol grounds, and was amongst the first of the rioters to enter the Capitol Building at the Rotunda Door on January 6, 2021. Jaure identified herself on CCTV video. Jaure conceded that she and Hawkins walked into Speaker Pelosi's Staff office. She knew it was Pelosi's office, because she saw Pelosi's nameplate on the desk.

*Hawkins' Interview with the FBI*

Before he was charged, Hawkins and his attorney also voluntarily met with the FBI on April 7, 2022. Like Jaure, Hawkins admitted to the FBI that he attended the Trump rally, walked from the rally to the Capitol grounds, and then walked into the U.S. Capitol Building on January 6, 2021. Hawkins admitted seeing other rioters push officers by the Rotunda Door. Hawkins identified himself on CCTV video and remembered walking through the Rotunda (which he identified as a room with paintings and statues) and opening a door and seeing what he thought was the Senate Chamber. He did not go into that room. He described it as the room where the President gave the State of the Union address or a similar room with a lot of seats.[3]

*The Charges and Plea Agreement*

On August 8, 2023, the United States charged Jaure and Hawkins by Information with violating 40 U.S.C. § 5104(e)(2)(G). On September 11, 2023, pursuant to plea agreements, Jaure and Hawkins each pled guilty to the sole count in the Information. As part of their plea agreements, Jaure and Hawkins each agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Jaure and Hawkins now face sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by their respective plea agreements and the U.S. Probation Office, Jaure and Hawkins each face up to six months of imprisonment and a fine of up to $5,000. They must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

---

[3] The President gives the State of the Union speech in the House Chamber. Counsel is unaware of rioters accessing the House Chamber. Hawkins may be refencing Room S228, the Old Senate Chamber.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days intermittent confinement as a condition of three years' probation for each defendant. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution as to each defendant.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Jaure's and Hawkins' participation in this attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like Jaure and Hawkins, the absence of violent or destructive acts is not a mitigating factor. Had Jaure or Hawkins engaged in such conduct, they would have faced additional criminal charges.

The most important aggravating factors in Jaure's and Hawkins' case are:

(1) Jaure and Hawkins had a front row seat to the violence on the East Front and still chose to climb the stairs to the Rotunda Door.

(2) they were amongst the first rioters to breach the Rotunda Door, holding the door open and squeezing through a tight gap, while officers attempted to shut the Rotunda Door.

(3) They returned to the Speakers' Hallway and entered the House Speaker's Office—a sensitive area of the Capitol building, even though they had been escorted out by officers minutes before. The officers escorting these defendants diverted law enforcement resources away from assisting other officers and politicians and protecting the building.

(4) Even though they knew they were not supposed to be there, Jaure and Hawkins walked through multiple locations throughout the U.S. Capitol Building for approximately 40 minutes.

### B. Defendants' History and Characteristics

*Jaure.* As set out in the PSR, Jaure has no criminal history, and is the mother of two young girls. ECF 17 ¶¶ 26-32, 42. Jaure has been compliant with her conditions of pre-trial release.

*Hawkins.* Hawkins is the father of the same two young girls. ECF 18 ¶ 40. He has a criminal history of misdemeanor offenses. *Id*. ¶¶ 26-31. They include: a 2007 arrest for theft, a 2011 arrest for possession of marijuana for sale, and a 2011 conviction for driving or being in control while under the influence of alcohol or any drug, for which he was sentenced to 10 days in jail (nine of which were suspended pending completion of substance abuse screening and follow-up treatment). *Id*. Hawkins has been supporting the family for the last five years as an Uber driver, earning approximately $4,000 per month. *Id.* ¶ 48.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233 (ABJ), Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a

political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by these defendants. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. *See United States v. Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a legitimate protest. *See United States v. Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't

15

think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

It appears that both Jaure and Hawkins are contrite, as they conceded that their coming onto the Capitol grounds and into the Capitol building was the culmination of a series of poor decisions. Nonetheless, Jaure and Hawkins each decided to enter the Capitol amidst the surrounding chaos, blatantly ignored police directives while they were inside the building, and entered a sensitive area of the Capitol—House Speaker Nancy Pelosi's Staff Office. The Court must sentence Jaure and Hawkins in a manner sufficient to deter them specifically, and others generally, from going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Jaure and Hawkins based on their own respective conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Jaure and Hawkins each pled guilty to Count One of the Information, charging them with Parading, Demonstrating and Picketing in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this Court have sentenced Capitol breach defendants who spent time in sensitive places within the Capitol. A defendant's entry into a sensitive space, such as a member's office, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people. That person's presence is even more disruptive. An unauthorized individual in a private office poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway.

One of the most famous photographs from January 6 is that of a rioter in Speaker Pelosi's office, with his feet on her desk. *See* Amended Complaint, *United States v. Barnett,* 21-cr-38, ECF 3 at 2. That photograph has become notorious likely for exactly this reason, because of what invading the office of a member of Congress represents: a show of intimidation and an attempted display of power, above and beyond entering the building.

In *United States v. Jancart and Rau*, 21-cr-148 (JEB) and 21-cr-467 (JEB), the defendants pled guilty to misdemeanor charges of 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in the Capitol Building) in connection with penetrating the Capitol Building all the way to the Speaker's Conference Room. Chief Judge Boasberg sentenced the defendants each to 45 days of incarceration.

Like Jancart and Rau, Andrew Ericson also went to the Speaker's Conference Room. Gov. Sentencing Memo, *United States v. Ericson,* 21-cr-506 (TNM), ECF 37 at 3. Judge McFadden imposed a sentence of 20 days' imprisonment, discussing the defendant's entry into an office as follows: "That's a private area and your violation of that space suggests a certain brazenness and intentionality that requires consideration in your sentence. You could have caused a very dangerous and fearful scene had the speaker or her staff been present in the office when you and others entered it." *Ericson,* Tr. 12/10/21 at 21. Judge McFadden concluded that entering an office put Ericson in a "different category" than people "who were only in areas that would normally be open for tours." *Id. See also United States v. Thomas and Marilyn Fassell*, 21-cr-00692 (CKK) (husband/wife defendants who first entered the Capitol Building and then Speaker Pelosi's office suite and remained in the Building about 40 minutes. Judge Kollar-Kotelly sentenced the husband to 24 months' probation with 7 days intermittent confinement, and the wife (who also incited other rioters) to 30 days' incarceration followed by three years' supervised release).

V.   **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Jaure and Hawkins would each pay $500 in restitution, which reflects in part the role Jaure and Hawkins played in the riot on January 6.[6] ECF 10, 11 (Plea Agreements) at ¶ 11. As the plea agreements reflect, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 14, 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Jaure's and Hawkins' restitution payments must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* ECF 17 (Jaure PSR) at ¶ 81, ECF 18 (Hawkins PSR) at ¶ 72.

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence each Defendant to 14 days intermittent confinement as a condition of three years' probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreements in this case, $500 in restitution as to each defendant. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Jaure's and Hawkins' liberty as a consequence of their respective behavior, while recognizing their acceptance of responsibility for their crimes.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052

By:    *s/ Alexandra F. Foster*
           ALEXANDRA F. FOSTER
           Assistant United States Attorney
           D.C. Bar No. 470096
           Detailed to the D.C. U.S. Attorney's Office
           Washington, DC  20530
           Alexandra.Foster@usdoj.gov
           (619) 546-6735