# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA** :

      **v.**                  :   **Cr. No. 23-CR-264 (JDB)**

**YESENIA JAURE HAWKINS**       :

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

    Ms. Hawkins comes before this Court for sentencing having pleaded guilty to one count of parading, demonstrating or picketing in United States Capital on January 6, 2021. She and her husband, Jacob Hawkins, agreed to plead guilty before charges were brought. The information was subsequently filed on August 8, 2023, and she entered a guilty plea on September 11, 2023. She was released on conditions on that day and she has been fully compliant with those conditions of release. The Probation Office has recommended a term of probation and Ms. Hawkins asks the Court to adopt that recommendation as its sentence in this case in light of her history and characteristics and her role on January 6, 2021.

    Ms. Hawkins had a difficult childhood as documented in the PSR and, earlier in her life struggled with drug use. However, she has addressed those issues and has turned to her faith and family for support. She is a loving wife and mother who dedicates herself to raising her small children, one of whom is still reliant on nursing. As the numerous letters attached to this memorandum demonstrate, Ms. Hawkins is a kind, loving mother who spends all her time caring for her family. (See Exh. B[1]). She is extremely remorseful for having participated in the riot on

---

[1] Many of the letters were written on behalf of both Mr. and Mrs. Hawkins and are attached here in support of both of them.

January 6, recognizing that it was bad for the country and has put the stability of her family at risk. As she has noted, it was "stupid" and "disrespectful." (See Exh. A). She recognizes that she "should have never done what [she] did" and should have thought about how her actions would affect her family. The thought of being away from her small children is causing her tremendous anxiety and has compounded her mental health issues as documented in the PSR.

Ms. Hawkins came to the District of Columbia to attend the Stop the Steal Rally with her husband on a charter bus from Michigan. She did not come with the intent to engage in violence, did not come prepared for violence, and did not participate in any violent acts. She fully acknowledges that she was wrong to go into the Capitol and she regrets doing so. She understands wandering into the private spaces within the Capitol was particularly troubling. But, unlike others, she was peaceful as she walked through the building taking pictures. She recognizes just being there contributed to the damage caused that day and is particularly upset with herself for not immediately leaving. As she freely notes, it was incredibly stupid. As the letters submitted on her behalf demonstrate, this was very out of character for her and does not represent who she was that day or more importantly who she is today.

Ms. Hawkins has no criminal history, although she has acknowledged a past substance abuse issue that is now in remission. She considers herself first and foremost a mother and wife. She lives with her husband, two children and his family in a modest home in Michigan.



She dotes on her children and spends nearly all of her waking hours caring for them.



She is committed to her faith and is an active member of her church and community which is evident from the letters submitted on her behalf.



Ms. Hawkins has no prior criminal history and has been fully compliant with her conditions of release, demonstrating that she can be trusted in the community. She has expressed how touched she is by the support of the people in her community and her family members in the letters that they have written. She will never put her family in this position again.



Congress requires federal courts to impose the least restrictive sentence necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include

(a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). In this case, a term of probation would meet all of the pertinent purposes of sentencing and would be appropriate given Ms. Hawkins' history and characteristics, including her significant family obligations as the mother of two small children, her contrition, her early and complete acceptance of responsibility, her complete compliance with release conditions, her demonstrated abandonment of criminal activity in the three years that have passed since the January 6 events, and her minimal role in the offense.

Notably, Ms. Hawkins did not engage in any violence or destruction of property. The government suggests that that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, she would have been charged with felony offenses. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there is no need for incapacitation, specific deterrence or rehabilitation. Ms. Hawkins' likelihood of recidivism is very low. She has accepted responsibility for her actions and has engaged in no similar behavior in the three years that have passed. On April 7, 2022, she met with the FBI before any charges were brought, fully

confessed to her actions, and expressed true contrition. This was more than a year before any charges were brought. She has not expressed any belief that the actions she took that day were justified, were a legitimate protest or expression of first amendment rights. As the government has recognized, her contrition is genuine. Moreover, she has been fully compliant with her release conditions, suggesting she will have no difficulty on supervision. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

General deterrence has been served in these cases by the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge in full view of the world. The rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. There is no doubt that general deterrence has been served for those who would be deterred. Moreover, the public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved.  Those who would not be deterred by these consequences are likely not capable of being deterred.  A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

Ms. Hawkins did not destroy property, steal property, commit violent acts, or encourage others to do so.  She did not engage in pre-planning or coordination activities.  She brought no weapons or even defensive gear with her. While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public

way as Ms. Hawkins has done.  This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions. It is also important to note that after her arrest in this case, Ms. Hawkins has taken no actions to suggest she would ever engage in this type of conduct again.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes.  However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case.  Sentences imposed in these cases vary from very short terms of probation to periods of incarceration, and everything in between. While Ms. Hawkins' conduct was serious, probation remains an appropriate resolution and would not result in disparity.  *See e.g., U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months' probation); *United States v. Jackson Kostolsky*, 21-cr-197 (DLF) (36 months' probation with home confinement); *U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (12 months' probation); *U.S. v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months' probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed as requested by government); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed with lesser terms of home confinement than requested by government); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM)

(2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr97 (PLF)

(probation imposed as requested by government);  *United States v. Eliel Rosa*, Crim.

No. 21-068 (TNM) (12 months probation); *United States v. Jacob Hiles*, Crim. No. 21-155

(ABJ)(2 years probation); *United States v. Sean Cordon*, Crim. No. 21-269 (TNM) (2 months

probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation);

*United States v. Andrew Wigley*, Crim. No. 21-042 (ABJ) (18 months probation); *United States v.*

*Andrew Hatley*, Crim. No. 21-098 (TFH) (3 years probation); *United States v. Rachael Pert*,

Crim. No. 21-139 (TNM)(2 years probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235

(RC)(12 months probation); *United States v. Brandon Nelson and Abram Markofski*, Crim. No.

21-344 (JDB) (2 years probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55

(RBW) (probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM)

(12 months probation with community service); *United States v. Thomas Gallagher*, 21-Cr-41

(24 months probation).

Indeed, Counsel has reviewed a recent chart the government compiled showing sentences

to date in the January 6 cases, and as of November 8, 2023, there were 371 cases where

defendants have been sentenced on the petty misdemeanor offenses under 40 USC 5104 as Ms.

Hawkins will be. Of those 371 cases, 216 cases (nearly 60%) received no term of incarceration.

Of the 216 individuals who received no term of incarceration, 128 received straight probation or

a fine, while 93 received a period of home detention. For the individuals who received no

incarceration, the number of days of home detention ranged from zero days to 120 days, with the

mode and median being zero days and the mean being 25 days of home detention. A sentence of

incarceration is not warranted -- looking at all 371 cases sentenced under 40 USC 5104, the

mode of days in custody is zero, the median is zero, and the mean is 15 days. This figure is of

course skewed by sentences where individuals acted far worse than Ms. Hawkins or where they had been held pretrial and were ultimately sentenced to the maximum and released.[1]

**CONCLUSION**

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Ms. Hawkins places her trust in this Court to do just that. She asks the Court not to separate her from her small children and to instead follow the recommendation of the Probation Office to impose a period of supervised probation. If the Court deems more punishment is needed, she urges the Court to impose a short term of home confinement instead of intermittent confinement.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
Shelli_Peterson@fd.org

.

---

[1] While counsel has not had time to recalculate the averages, there appear to have been only 9 additional sentencings for the 5104 petty misdemeanors since November 8, 2023:  five resulted in a brief period of straight probation; one received probation with home detention; one received probation with 14 days intermittent confinement; two received 90 days incarceration. This suggests the statistical analysis remains accurate.